which is 21-13880, Kimberly Regenesis, LLC versus Lee County. So whenever you're ready. Before we get there, I think we really have to talk about jurisdiction, and at least with regard to me standing. So I want to break it up between Lee County, because you're representing two people right now, correct? Okay. I wanted to break it up between the county first, and then the commissioner second, okay? All right. So with regard to the county, appellate standing, as I understand the law, requires adverseness to the decision. In other words, you have to be adverse to the decision. You have to be the party who is affected by the decision. You agree with that? Is that a fair representation of our law? I believe so, your honor. How is the county affected by the decision? The county is affected by the decision by the fact that the commissioners are being hailed into court. Why would that affect the county? So the county is the board of county commissioners. So in terms of the commissioners being hailed into court, it distracts them from their job and their duties. Okay. So we're pretty far along in this litigation. Where is there evidence in the record that that is the case? Because as I understand it, all we're talking about here is a four-hour deposition. Yeah, I mean, certainly it'd be a matter of logic if we were talking about every commissioner, all nine of them, or all seven of them, or all five of them, being hauled in for three days in the middle of the busiest tax season and all sorts of things. But this is four hours, and that was collective for three, although we only have one left. Right, your honor. It's limited to two topics. There's nothing in the case law that, with respect to immunity, that makes those types of distinctions. So again, you're focusing on the merits. I'm not talking about the merits. You may be right. Okay. I'm talking about adverseness. How are you affected by the decision of the county, and I'm talking about the county only right now. Sure. How is the county affected by the decision by a commissioner who has to take no more than four hours to answer questions about two topics? Because he's being hailed into court to talk about his judicial decision. Counsel, he could object, not answer the question. This is a legislative privilege, basically. You can call it immunity, it's the same thing, congressmen, legislators, et cetera. That's his right not to be forced to testify on certain matters, like his thought process is. All right. So you issue a subpoena and have him testify, and he's got plenty of protection there. The question is put to him, why did you decide it this way? He says, I refuse to answer. What happens next? In terms of the . . . Yeah. No, no. What happens next when the commissioner refuses to testify because the other side is taking his deposition? What does the other side do? They go to court. And what with? I assume a motion for contempt. For contempt? Correct. You go to the judge and they say, judge, you ordered him to testify, and he's not testifying, so we'll give a contempt hearing, won't we? It would probably, in this case, if it involves . . . No, no. I'm talking about the classic case. Oh, okay. You'd have a contempt hearing. Yes. Because there would have been a subpoena. That's right. And the court would determine whether or not the questions were privileged, or the testimony was. Yes. All right. And if the court ruled against the commissioner and held him in contempt, then what? Then the . . . Then what? Oh, the commissioner would have a right to appeal. Right to appeal. You're not even . . . the county's not doing anything. He's taking the appeal, and he's got an interlocutory appeal. He's got an appeal, period. He's got a judgment. Sure. Yes. We don't have to worry about jurisdiction for him. Meantime, you're just sitting by. So, yes. The county's sitting . . . it's not the county's privilege is the point of the matter. But the county has been harmed. No, the county's not harmed, because if the court of appeals decides he's got to answer the question, the county's not harmed because the evidence was appropriate. If the court of appeals reverses the contempt citation, the county's not harmed because the evidence is eliminated. Yes, Your Honor. I understand. All right. So, the county's protected all the way around, isn't it? Here, the fact that the commissioners are being ordered to sit for their deposition is harm to the county. No, no, no, no, no. That's his right. The commissioner may want to testify. Suppose he wants to testify.  So, he's waived his immunity. He does. You don't have anything to do with that. You don't have anything to do about it, do you? Well, it's not . . . It's his right not to testify. It's not your immunity. It's not the county's immunity. It belongs to the individual, correct? I would agree with that. You're right. And here, Mr. Pendergrast, he didn't challenge the order. The only one challenging the order is Lee County. Oh, no, both. Okay, so let's talk about that. So, I know on appeal, the notice of appeal now says the commissioner. Yes. Correct? But let's talk about that for a second, and this goes to, I think, the question that Judge  Because throughout the litigation, and I'm not going to go into the details of the litigation, but throughout the litigation, the notice of appeal says the commissioner. And I'll go through each of the steps. So, originally, a protective order was filed, and this is docket entry 66, and it was only done on behalf of Lee County. Then, a hearing, a minute entry for a hearing was held, and it indicates that Ms. Dyson was present only on behalf of the defendant, Lee County. Then, the notice of supplementary authority was filed, and it was done only by Lee County. A magistrate judge had made an R&R and found that as to defendant Lee County's motion for quash, that the defendant, the county, was asserting the privilege. And then, on the written objections, it was only on behalf of the county. And when the district court adopted the order, the district court was clear that it was defendant Lee County's objections. And for the first time only in the notice of appeal, did the commissioner make an appearance. Is anything I just said wrong? No, Your Honor, but let me explain why. Well, here, I don't know that I need to know why. What I am interested in is the legal implications. So, my question is this. While we don't have a case directly on point, almost every other circuit has said that as a matter of prudential standing, where a non-party does not litigate below, they do not have the right to take an appeal, even though they theoretically are harmed and they theoretically have the right to file a notice of appeal. As a practical matter, we're not going to consider it as a matter of prudential standing because they didn't litigate below. Your Honor, the reason that there was no litigation by Commissioner Pendergrass is because he was not subpoenaed. The opposing party issued a notice of deposition and that's why the county responded with the way he did. Did he have the basis to object in any way whatsoever? On a notice of deposition? No, a notice of deposition is to a party. And so, that's how they proceeded procedurally and that's why we proceeded procedurally. But it is his immunity and he can't be dragged into a deposition. Counsel, let's assume we entertain your appeal. Are you familiar with the provisional decision doctrine under Title III of the Constitution? I believe so, Your Honor. All right, you appeal. Let's recreate the case a little bit. There's a motion to make him testify. He hasn't testified. There is a privilege, though, and he can waive it. So, you appeal. If we render a decision, it's provisional because we have no idea what would happen if he testified and he invoked the privilege, do we? In terms of whether he would be... Our decision would be worth nothing. Well, no, I don't agree with that it would be worth nothing. Suppose we said we can't decide this case because we need to know what happens when he testifies and invokes the privilege. But the case law surrounding immunity doesn't require someone to be held in contempt before they can appeal. I think what Judge Joe Flatt is asking is how do we know he's going to assert the privilege? He didn't. Well, he is going to assert the privilege. You're telling me that. Because we argued all of that on his behalf. I know, but that's why we started where we started. Sorry. Because the commissioner, I mean, if it's like a company, the company has an employee, it could be the president. The president is asked to do something. He has to submit a pleading saying, you know, a motion for protective order. Even a non-party can file a motion for protective order, correct? You agree with that? I think a non-party, no, I don't think they can file a motion for protective order under Rule 26. I think that has to be done by a party. And that's what was done in this case to protect this immunity that exists, this quasi-judicial immunity. He could move to quash the notice. If he was subpoenaed, he could move to quash the subpoena. Counsel, Federal Rule of Civil Procedure, 26C1, quote, a party or, quote, any person from whom discovery is sought may move for a protective order in the court where the action is pending. I know I haven't been a lawyer in a long time, but I'm pretty sure that I did that as a litigator. So that is not how the system works. A non-party can move for protective order. Of course it makes sense because you have a right to assert your privilege, whether it's judicial immunity or whatever the privilege is. What if they want you to testify as to a trademark or a copyright? You have the right to go to court and say that you want a protective order on that. But the privilege won't. But here we don't know what the privilege is because the person has never asserted it. So you are making assertions that we have no idea what they are because the individual never pled anything in front of a court. But it has been asserted. By Lee County, not by the individual. I understand that with respect to the pleadings, but that's who we were asserting the privilege on behalf of. But do you have the right to do that? It doesn't belong to you. How do you have the right to assert someone else's privilege? They do believe it belongs to the county because the county has been harmed because you have its commissioners being hailed into court. So the harm goes to standing, but I'm not talking about standing right now. We're talking about something else, which is can you assert the privilege? Do you have the ability to for someone else? So let's take qualified immunity, for example. Let's say one of your police officers was sued. You agree that if the lawsuit was against Lee County itself and the officer wasn't sued, you would have no right to assert qualified immunity on behalf of the officer, correct? I believe that's correct, Your Honor. How is that not exactly the same? Well, it isn't exactly the same here because we had a notice of deposition. That's what we were responding to. We were not responding to a subpoena. They never subpoenaed him to come in. So we're responding to a notice of deposition. We file a protective order, no different than saying that this topic area cannot be covered in a deposition because it is subject to immunity. And now we have an order from the court directing Commissioner Pendergrass, not the county, directing Commissioner Pendergrass to show up for a deposition that he wasn't subpoenaed for, and now you're saying that we have no standing to bring that assertion. He's fully protected. He shows up for the deposition. They put a question to him. He says, I refuse to answer on a privilege ground. Court says you're held in contempt. We, right now, have a case. We have a guy with a privilege. We have the question that was put to him. We make a determination whether it's within the privilege and decide it. If that had happened, that's what we have now. And we have something to decide. We don't have anything to decide. When you move to quash the deposition, that's a whole different thing than the privilege. You can answer that question. You can have all kinds of reasons why the deposition ought not be taken because it won't lead to evidence. It won't lead to evidence that will lead to evidence. So that's a whole different proposition than asserting the privilege. You can go ahead and answer that question and then finish up, please. Yes, Your Honors. So the privilege, the immunity, has been asserted by the procedure of how this came before the court. And to argue now that we don't have the ability to have that decision when the court is ordering Commissioner Pendergrass to show up for a deposition. That's how we are here. That's why we had standing to bring this issue. And that is why the court has jurisdiction. And certainly the case law in this court supports that the Commissioner is fully immune from answering these questions. Thank you. May it please the Court. James Green. And seated behind me are my clients, Dr. Peggy Morricade and her husband, Tom Morricade. Thank you very much. It looks like you've flushed out most of the jurisdictional questions. But if you want me to address them. I'd like for you to weigh in on some of the issues you've heard. You've heard the panel's concerns. I'd like for you to weigh in on them. First of all, this appeal has nothing to do, given the narrowing by Magistrate Judge Mazzel and Judge Chappelle's affirmance of that order. It has nothing to do with any immunity. It has nothing to do with legislative immunity. We're not dealing with the legislative immunity. Counsel, that really goes to the merits. And we can talk about the merits maybe in a little bit. But I'm interested to hear your thoughts on the jurisdictional issues. Do you believe we have either appellate jurisdiction or appellate standing with regard to the county and Commissioner Pendergrass? Absolutely not. Okay, tell me why. This order, the order being appealed, does not implicate any judicial, legislative, or executive kind of immunity, deliberative process kind of immunity. But that goes to the merits. When we decide jurisdiction and standing, we're explicitly told, do not decide the merits. In other words, they've alleged an immunity. They've alleged a privilege. We don't have to rule on the merits of that to decide whether we have jurisdiction or standing. Once we have jurisdiction or standing, then we get to the merits. Well, we have both mandamus, which I think is being carried. We're not dealing with the mandamus. The first question is, who does the immunity belong to? The person, does it belong to the county or does it belong to the commissioner? It belongs to the commissioner. And has the commissioner, did the commissioner below assert that privilege? No. Not until they file this appeal. What do we make of that now that they have? Does that confer standing? And if so, are there prudential considerations which we should stay our hand at because he didn't participate below? Certainly prudential considerations. And one of which is I think Judge Choflat has raised, which is the normal course is, and I think you know there are two Collingsworth decisions out there, one was reported, one was not, basically saying that you don't have standing unless and until you're held in contempt. Well, that's certainly the normal case for discovery. There are some exceptions jurisdictionally for that. The Perlman Doctrine is one exception. A made-up doctrine that we have regarding government officials is another one that we have. And then your opposing counsel has asserted collateral order as a potential jurisdictional basis. Why are those not bases in which we have a bellen jurisdiction? Well, first of all, Mr. Pendergrass is not a party here. Second, he's not being sued. He couldn't be sued under the ADA because this is an ADA claim only. Number two, there's no immunity that's implicated here. Were there some kind of immunity? Counsel, you're doing it again, so I'll ask you again. We're not, at this stage, these questions, assume for the purpose that they've alleged immunity and we don't have to decide the merits of that call. Assume it exists. I'm sorry, what? Assume immunity exists. We don't have a final judgment. Well, actually, if there were an immunity that this court recognized from the face of the order, then you might very well have immunity either as under the collateral order doctrine. Do you think there would be a collateral order issue? Let me ask about that because I have a question about that. If the established procedure is as Judge Joflat laid out, and I think he's 100% correct, how would it meet the third prong of the collateral order doctrine? In other words, if there is an alternative available avenue for appellate review, then how do we, as a categorical matter, say that there's no opportunity to review the immunity? How could collateral order doctrine apply? It wouldn't. That's why I'm not sure that as long as there's the contempt outlet, I don't see why we would treat this the same way we would treat qualified immunity in the motion to dismiss and summary judgment context where there isn't an outlet to be able to immediately appeal. I think I followed the question. It wouldn't be the first time I was confusing. I might have confused it as well. If there were an immunity that was asserted, and I think you asked to address the Dennis against Sparks case. We'll get there, but that's on the merits. Let's talk about the collateral order issue first. I think they are intertwined. If there is an immunity, then you can appeal. That's how I start every analysis involving mostly qualified immunity. Not every witness, and this goes to Dennis versus Sparks. You agree there's no jurisdiction here? Yes. Is there anything else you want to say? About jurisdiction? No, I'll stand on our response to the three jurisdictional questions. All right, if you want to spend a few minutes on the merits, that's fine. This order that's being appealed from has nothing to do with any immunity, legislative, executive, or judicial. County commissioners perform both executive functions, legislative functions, and also, in the case of certain rezoning decisions, quasi-judicial functions. There's a videotape of the rezoning hearing from August 5th, 2016. There's also a written transcript of that. We don't intend to go into that. In fact, Judge Mizell's order specifically says all we can talk about are ex parte communications about which none were disclosed or asked about. Counsel, those are related to deliberations. In other words, your theory is that the fix was in that because of ex parte deliberations and because of, we'll call it campaign contributions, you might term it something else, and that's why. This is clearly related to deliberations and decision making by the commissioners. To me, your best argument on the merits is not that judicial immunity doesn't exist here. I think they are acting as judicial officers, at least in some manner or way. The real question is, does judicial immunity prohibit someone from giving a deposition in a third-party case? Dennis v. Sparks seems to speak to that, does it not? Dennis v. Sparks says that you can speak about matters that aren't related to the judicial function. If you're going to speak as an ordinary witness, in this case we contend as a political candidate, without touching on the actual quasi-judicial hearing or deliberations, I think that Dennis v. Sparks allows us to do that. I researched, if you look at the third or fourth sentence from the bottom of page 31 of the Dennis v. Sparks decision, it has a language that says, there are no rules exempting judges from their, quote, normal obligation to respond as a witness when he had information material to a criminal or civil proceeding. I want to ask, when you spoke with these people, when you went to meet with these neighbors, did you see all the signs in the neighborhood that said, no rehab here? Did you read any of the communications? There were apparently 5,000 or 6,000 letters or flyers that were sent out to people. Doesn't this go, though, directly to the question that Judge Joflat asked, which is, I know you're telling me the questions now, but there's nowhere in the record that tells me the questions you're going to ask. There are some broad areas that you're allowed to ask about, but until we know if it is truly judicial or not, if it falls within the judicial function or not, and until we know that the commissioner is going to assert an immunity as to question X and question Y and not as to question Z, how can we possibly make a decision? I can represent that we will not go into the actual deliberations or anything involved on August 5th of 2016. I know, but it's very hard for us to make that kind of call in the abstract. I believe you when you tell me that, but the best laid plans, as you know, don't always work out. We have a court order that substantially cabins us away from the deliberations and what occurred during their hearing. We don't need that as evidence because of the videotape and the transcript, but there is enough evidence in the record here that there was a lot of bundling of campaign contributions going on. There were some irregularities or inconsistencies in the deposition testimony between Mr. Burt and his wife about who donated what. We know that there were approximately 20-plus campaign contributions that were from Mr. Burt's family, his related businesses, his lawyer's businesses, the lawyer himself, another opposing lawyer. We know that there was all of this stuff. It was not reported or it was not disclosed at the hearing. It was not reported in the logbook that exists for ex parte communications. I think there was one reference by one county commissioner to some conversation with someone about Winkler Road, which I think is where the property that we're seeking rezoning on is located. But there was nothing about campaign contributions. There was nothing about attending any meetings or campaign fundraisers or discussions with Sawyer Smith or Bruce Strayhorn, the two lawyers that were representing the neighbors. I think we're entitled to get into that. In fact, the county has a policy, a written ordinance, that prohibits county commissioners from speaking with anyone about a rezoning that's coming before them. So I think by that definition, that functional exclusion, that that also suggests that there was no quasi-judicial protection for ex parte activities or campaign contributions. Thank you, counsel. Thank you very much. Your Honors, here what we have before you is a court decision that says that the commissioners are not entitled to any immunity at all because they're not parties to this lawsuit. And that is a clearly erroneous decision. And with respect to Dennis V. Sparks, if I could speak to that a moment, the language in Dennis V. Sparks is dicta, even the decision itself. Counsel, whether or not there's immunity is a matter that has to be raised by the commissioner. As I say, in a contempt proceeding, then we would have something to decide. You want us to decide it in the abstract. I'm not asking you to decide it in the abstract. You have to be asking it. There's no Cohen jurisdiction in this case. For a collateral order to be appealable under Cohen, it has to be that we couldn't review whether he has an immunity or not, or a legislative immunity, a privilege, whatever the case. We couldn't do that. Because there is a way that his rights can be adjudicated without a final judgment in your case. So Cohen doesn't apply. Respectfully, Your Honor, I don't agree because In re Hubbard says it does. Well, if In re Hubbard says it applies, in my view, we need to go on bunk. Well, Hubbard deals with... Hubbard does not... Judge Joe Flatt's 100% right. Hubbard does not deal with the collateral order doctrine. It doesn't. But what Hubbard does deal with, what seems to be sort of an offshoot of Perlman, which we've called this government official exception, where if a government official is a non-party and is ordered to do something, that that government official may have some appellate rights. I think that's what you're referring to, correct? Yes, Your Honor. And that's what we are here before you on. Commissioner Pendergrass is a participant in this appeal. I understand Your Honor's point about him not being below, but the reason he wasn't below is procedurally. That's not how this came about. They didn't subpoena him. I know, but he clearly knew that he was involved here, and he clearly had the avenue to file a protective order under Rule 26. So I'm having trouble understanding how we as a prudential matter would ever address that where the party himself who would assert this has never asserted and was never before the district court to assert it. Because we have here a body. The Board of County Commissioners is the corporate body of the county. But again, it's the same. You wouldn't do that for a police officer, okay? Lee County does not go around filing appeals and filing motions in district courts on behalf of police officers and asserting qualified immunity in their behalf. In fact, they have their own lawyer. The county has their own lawyer if they get sued. But that's not what happened here. I mean, this is the problem is if someone is noticed for deposition and they don't show up, if they don't file something, that's a problem. And it cannot be asserted by someone else. It has to be asserted by them, the right and the privilege not to attend. Your Honor, I see my time is up. May I briefly address that? Yeah, you can answer that question and then wrap up, please. Okay, thank you very much. The judicial body here is the Board of County Commissioners. It's not an individual judge. We're not dealing with a district judge, a circuit judge. We're dealing with a body. The immunity applies both to the body as well as to the individual judges that serve on that body. Therefore, I do believe that the county appropriately asserted it. We have a district judge here saying that there's no immunity whatsoever that exists because they're not a party. And that is blatantly contrary to Supreme Court precedent and the precedent of this court. Thank you. Thank you, counsel. We are adjourned for the day. Thank you so much. Thank you.